```
                UNITED STATES DISTRICT COURT
                 EASTERN DISTRICT OF KENTUCKY
                  CENTRAL DIVISION at LEXINGTON
```

TONY BROWNING,                    )
                                  )
    Plaintiff,                    )
                                  )         Civil Action No.
v.                                )         5:13-CV-316-JMH
                                  )
CAROLYN W. COLVIN, ACTING         )         **MEMORANDUM OPINION**
COMMISSIONER OF SOCIAL            )              **AND ORDER**
SECURITY,                         )
                                  )
    Defendant.                    )

*** *** ***

This matter is before the Court upon cross-motions for Summary Judgment [DE 10, 12] on Plaintiff's appeal of the Commissioner's denial of his application for disability insurance benefits and supplemental security income benefits. [Tr. 9-20].[1] The Court, having reviewed the record and being otherwise sufficiently advised, will deny Plaintiff's motion and grant Defendant's motion.

**I. Overview of the Process and the Instant Matter**

The Administrative Law Judge (ALJ), in determining disability, must conduct a five-step analysis:

> 1. An individual who is working and engaging in substantial gainful activity is not disabled, regardless of the claimant's medical condition.

---

[1] These are not traditional Rule 56 summary judgment motions. Rather, it is a procedural device by which the parties bring the administrative record before the Court.

2. An individual who is working but does not have a "severe" impairment which significantly limits his physical or mental ability to do basic work activities is not disabled.

3. If an individual is not working and has a severe impairment which "meets the duration requirement and is listed in appendix 1 or is equal to a listed impairment(s)", then he is disabled regardless of other factors.

4. If a decision cannot be reached based on current work activity and medical facts alone, and the claimant has a severe impairment, then the Secretary reviews the claimant's residual functional capacity and the physical and mental demands of the claimant's previous work. If the claimant is able to continue to do this previous work, then he is not disabled.

5. If the claimant cannot do any work he did in the past because of a severe impairment, then the Secretary considers his residual functional capacity, age, education, and past work experience to see if he can do other work. If he cannot, the claimant is disabled.

*Preslar v. Sec'y of Health & Human Servs.*, 14 F.3d 1107, 1110 (6th Cir. 1994) (citing 20 C.F.R. § 404.1520 (1982)). "The burden of proof is on the claimant throughout the first four steps of this process to prove that he is disabled." *Id.* "If the analysis reaches the fifth step without a finding that the claimant is not disabled, the burden transfers to the Secretary." *Id.*

The ALJ determined that Plaintiff had not engaged in substantial gainful activity since March 15, 2010 [Tr. 14]. Considering step two, the ALJ found that Plaintiff possessed several "severe" impairments, including chronic neck, mid and

low back pain with multiple levels of bulging discs, and bilateral shoulder degenerative joint disease with supraspinatus tendinopathy [Tr. 14]; 20 C.F.R. §§ 404.1520(c), 416.920(c). During step three of the analysis, the ALJ concluded that none of the Plaintiff's impairments or combinations of his impairments met the severity listed in 20 C.F.R. pt. 404, subpt. P, app. 1 [Tr. 16].

At step four, the ALJ determined that Plaintiff had a residual functional capacity (RFC) to perform light work as defined by 20 C.F.R. §§ 404.1567(b), 416.967(b). However, Plaintiff was limited to tasks with no climbing of ropes, ladders or scaffolds; no more than occasional climbing of stairs and ramps, no work with hands over the head; and no exposure to temperature extremes, wetness, excess humidity or industrial hazards. Further, the ALJ found that Plaintiff was limited to entry level work with simple repetitive procedures and no frequent changes in work routines [Tr. 17]. While the ALJ considered a possible brain injury Plaintiff sustained when he was 26 years old, such an injury would have predated Plaintiff's successful work history and collegiate coursework [Tr. 18]. The ALJ also determined that Plaintiff had at least a high school education, could communicate in English, and at 51 years old was "closely approaching advanced age" on the alleged disability onset date under 20 C.F.R. §§ 404.1564, 416.963 [Tr. 18].

3

The ALJ found that Plaintiff was unable to perform any of his past relevant work because he was previously required to lift and carry more than 20 pounds [Tr. 18]. However, there were jobs in the national economy that existed in significant numbers that Plaintiff could currently perform [Tr. 18]. Therefore, the ALJ concluded that Plaintiff was not disabled under sections 216(i) and 223(d) of the Social Security Act [Tr. 19].

On appeal, Plaintiff argues that the ALJ erred in determining that he retained the RFC to perform light work, and that he is limited to performing no more than sedentary work. An RFC of sedentary work would result in a disabled classification under 20 C.F.R. pt. 404, subpt. P, app. 2 due to Plaintiff's age and work skills.

**II. Standard of Review**

In reviewing the ALJ's decision to deny disability benefits, the Court may "not try the case de novo, nor resolve conflicts in the evidence, nor decide questions of credibility." *Cutlip v. Sec'y of Health & Human Servs.*, 25 F.3d 284, 286 (6th Cir. 1994) (citations omitted). Instead, judicial review of the ALJ's decision is limited to an inquiry into whether the ALJ's findings were supported by substantial evidence, 42 U.S.C. § 405(g); *Foster v. Halter*, 279 F.3d 348, 353 (6th Cir. 2001) (citations omitted), and whether the ALJ employed the proper

legal standards in reaching his conclusion. *See Landsaw v. Sec'y of Health & Human Servs.*, 803 F.2d 211, 213 (6th Cir. 1986). "Substantial evidence is more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Cutlip*, 25 F.3d at 286 (citations omitted).

**III. Factual and Procedural Background**

Plaintiff was 51 years of age at the alleged disability date and has a high school education [Tr. 18]. Plaintiff has past work experience as an aluminum pourer, weekend order filler for Wal-Mart, and in roofing and construction. He also loaded plastic parts and assembled vacuum cleaners for Panasonic [Tr. 29-30, 33-34]. Plaintiff attended community college for two years after working for Panasonic [Tr. 35].

Plaintiff filed for a period of disability and disability insurance benefits, alleging disability beginning on March 15, 2010 [Tr. 156]. Plaintiff also filed a Title XVI application for supplemental security income (SSI), again alleging disability beginning on March 15, 2010 [Tr. 160]. Plaintiff's claims were denied initially and upon reconsideration [Tr. 106-109, Tr. 113-118]. Plaintiff then requested a hearing with an ALJ, which occurred on March 21, 2012 [Tr. 24-59]. The ALJ issued an unfavorable decision denying Plaintiff's claims for

benefits on March 30, 2012 [Tr. 9-20]. Plaintiff then filed a Request for Review, which was denied on April 23, 2013 [Tr. 3-6]. This appeal followed.

Plaintiff reports that he experiences chronic pain in his shoulders, arms, back, and neck [Tr. 182-83]. Plaintiff claims that he has to go to sleep to escape the pain because he cannot afford his medicine [Tr. 42]. Plaintiff's sister testified that he mostly lies around [Tr. 47], and Plaintiff averred that he cannot cook, clean, drive, or shop [Tr. 38, 197]. He can walk around the outside of his house, but cannot move his arms while doing so [Tr. 42]. Plaintiff claims that he does not leave his house, and his nephew cleans up for him and allows him to live in an apartment rent-free [Tr.42-3]. There is no significant medical evidence of record documenting treatment for the claimant's various complaints [*See* Tr. 15]. Plaintiff claimed that he did not have the money to see a doctor [Tr. 192], but had recently starting seeing Dr. Belanger because "he's cheapest and lets you owe him" [Tr. 36-7].

Plaintiff underwent a consultative examination with Southern Medical Group, Inc. on October 16, 2010 [Tr. 226-28]. A physical examination of Plaintiff revealed no neck tenderness, regular heart rate and rhythm, and no musculoskeletal structural deformity. Plaintiff was able to rise from a sitting position without assistance and bend and squat without difficulty, and

Plaintiff's grip was a 5/5. Plaintiff was alert and oriented to time, place, and situation, and showed no signs of being depressed or anxious. Plaintiff's cervical spine x-ray showed evidence of disc space narrowing and degeneration at the C6-C7 level [Tr. 227]. The consultative examiner diagnosed Plaintiff with chronic shoulder pain and degenerative change of the cervical and thoracic spine, determining that Plaintiff should be able to "sit, walk, and/or stand for some part of a full workday, lift/carry objects less than 15 pounds without limitations, hold a conversation, respond appropriately to questions, [and] carry out and remember instructions." [Tr. 228].

Plaintiff sought treatment of shoulder pain at the Ft. Logan Hospital emergency room in September 2010, reporting no primary care physician. [Tr. 434]. It appears that Plaintiff was also treated at Ephraim McDowell Regional Medical Center in September 2010, with a complaint of "shoulder pain since March." There, he was prescribed Flexeril and Lodine [Tr. 436]. In February 2011, Plaintiff visited Central Baptist Hospital with complaints of chest pain lasting longer than two weeks [Tr. 239]. A stress test was performed, which was negative with normal systolic blood pressure response [Tr. 326]. Plaintiff was diagnosed with chest pain and obesity [Tr. 15]. After treatment at the Garrard Clinic in April 2011, Plaintiff was

7

found to have no acute fracture, malalignment, or dislocation. There was also no acute soft tissue or articular abnormality [Tr. 456-7].

Plaintiff most recently saw Dr. Belanger on November 8, 2011 at the Paint Lick Family Clinic. Plaintiff complained of body aches, and an MRI of the cervical spine showed multilevel degenerative changes with bulging and uncinate hypertrophy. An MRI of the right shoulder showed AC joint osteoarthrosis and tendinopathy. Plaintiff was not taking any medications at that time [Tr. 15, 464-71].

Plaintiff underwent a physical residual functional capacity assessment (RFC) by Single Decision Maker Yolande Tingle on November 10, 2010 [Tr. 64-66]. Tingle found that while Plaintiff had exertional limitations, he could still occasionally lift 20 pounds and frequently lift 10 pounds. Plaintiff could also stand, walk or sit for about 6 hours, but his ability to push or pull was limited in the upper extremities. Plaintiff also had postural and manipulative limitations due to his left shoulder moderate joint space narrowing and pain [Tr. 64-5]. Ultimately, Tingle opined that Plaintiff was not disabled [Tr. 67].

Dr. Reed conducted an RFC assessment on May 10, 2011 [Tr. 89-93]. Reed also found that Plaintiff could occasionally lift 20 pounds and frequently lift 10 pounds, and that Plaintiff

could stand, walk or sit for about 6 hours [Tr. 89]. Reed found postural limitations due to back and neck pain [Tr. 90], but also determined that Plaintiff was not disabled [Tr. 92].

Vocational expert Ms. Joyce Forrest testified at the hearing before the ALJ [Tr. 51-57]. Ms. Forrest testified that a person with a light exertional level RFC equivalent to the ALJ's finding for Plaintiff would not be able to return to Plaintiff's past relevant work [Tr. 55]. However, Ms. Forrest determined that unskilled jobs in the light category existed within the national economy that someone with Plaintiff's RFC could perform. Those jobs included a machine operator or hand packer [Tr. 55].

## IV. Analysis

Plaintiff argues that the Court should reverse the Commissioner's decision to deny him benefits because the ALJ erred in determining that Plaintiff retained the RFC to perform light work. It is Plaintiff's position that he is limited to performing no more than sedentary work, which would result in a determination that he is disabled. Defendant responds that substantial evidence exists to support the ALJ's finding and the Commissioner's decision that Plaintiff is not disabled, and that Plaintiff did not meet his burden in showing that he is limited to sedentary work. Defendant further argues that the ALJ

9

properly considered Dr. McKenzie's opinion, and that he did not limit Plaintiff to carrying less than 15 pounds.

Substantial evidence exists to support the ALJ's finding that Plaintiff is not disabled. The ALJ considered Plaintiff's entire record in determining that he was capable of performing light work [Tr. 14-19]. Light work involves "lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds." 20 C.F.R. § 404.1567(b). The ALJ concluded, however, that Plaintiff cannot perform a full range of light work due to certain limitations. Because this placed Plaintiff between two RFC levels, the testimony of a vocational expert was necessary. *See Anderson v. Comm'r of Soc. Sec.*, 406 F. App'x 32, 35 (6th Cir. 2010).

> Where a claimant's RFC is in between two exertional levels . . . a VE is brought in to testify as to whether a significant number of jobs exist in the national economy that a hypothetical individual with the claimant's limitations can perform [, and] the ALJ may rely on the VE's testimony to find that the claimant is able to perform a significant number of jobs.

The VE testified that jobs existed within the national economy for a person with Plaintiff's RFC and limitations, including jobs as a machine operator or hand packer [Tr. 55]. The ALJ properly relied upon this testimony to determine that Plaintiff was not disabled. *See id.*

The ALJ also properly relied upon the testimony of state agency consultants Dr. Reed and Yolande Tingle, whose opinions along with that of Dr. McKenzie provide substantial evidence—that is, more than a scintilla of evidence—that Plaintiff has the RFC to perform light work with certain limitations and is not disabled. *See Cutlip*, 25 F.3d at 286 (citations omitted). While Dr. McKenzie diagnosed Plaintiff with chronic shoulder pain and degenerative change of the cervical and thoracic spine, he determined that Plaintiff should be able to lift and carry objects less than 15 pounds without limitations [Tr. 228]. Tingle also found that while Plaintiff had exertional limitations, he could still occasionally lift 20 pounds and frequently lift 10 pounds [Tr. 64-5]. Dr. Reed also found that Plaintiff could occasionally lift 20 pounds and frequently lift 10 pounds, and that Plaintiff could also stand, walk or sit for about 6 hours [Tr. 89]. These findings are consistent with 20 C.F.R. § 404.1567(b) for an RFC determination of light work, and constitute substantial evidence that supports the ALJ's finding and the Commissioner's decision that Plaintiff is not disabled. Therefore, the ALJ's opinion must be upheld.

Even if conflicting evidence exists that supports a conclusion contrary to the one reached by an ALJ, the ALJ's opinion will be upheld if supported by substantial evidence. *See Rudd v. Comm'r of Soc. Sec.*, 531 F. App'x 719, 727 (6th Cir.

2013) (citations omitted). Although Plaintiff contends that consultative examiner Dr. McKenzie concluded that he was limited to lifting and carrying objects *less than* 15 pounds, the record does not support this conclusion. Dr. McKenzie stated that Plaintiff "should be able to . . . lift/carry some objects less than 15 pounds *without limitations*" (emphasis added) [Tr. 228]. Dr. McKenzie did not state that Plaintiff was unable to carry more than 15 pounds, only that he could carry less than 15 pounds without issue. The ALJ properly considered Dr. McKenzie's testimony, noting his opinion that Plaintiff could only perform a reduced range of light work [Tr. 17].

**V. Conclusion**

Accordingly, for the foregoing reasons, **IT IS ORDERED**:

(1) that Plaintiff's Motion for Summary Judgment [DE 10] be, and the same hereby is, **DENIED**;

(2) that Defendant's Motion for Summary Judgment [DE 12] be, and the same hereby is, **GRANTED**.

This the 21st day of July, 2014.



Signed By:
*Joseph M. Hood*
Senior U.S. District Judge